**Sherman Alphonse GENDRON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 63 C 360(1).**

United States District Court
E. D. Missouri, E. D.

Feb. 11, 1964.

———◆———

Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Sherman A. Gendron, in pro. per.

HARPER, Chief Judge.

The petitioner has filed three documents with this court which he labels "Motion for Leave to File Petition to Vacate Sentence," "Motion for Leave to File Petition for Assistance of Counsel," and "Motion for Leave to File Brief." Each of the above documents also include a request to proceed in forma pauperis. This request was granted and the mo-

tions were filed. The three motions ask that the judgment and sentence which the petitioner is now serving be set aside under 28 U.S.C.A. § 2255, for a hearing upon this motion at which the petitioner shall be present, and for the appointment of counsel to represent him.

The petitioner, Sherman Gendron, was indicted with one Vito Biondo for the receipt and concealment of a quantity of United States Savings Bonds which were moving in interstate commerce, knowing that they had been stolen. The petitioner was represented by the law firm of Shaw, Hanks & Bornschein, and Biondo was represented by Morris Shenker. Biondo filed a motion to suppress the evidence, presented testimony with respect to the motion, and the motion was by this court overruled. The petitioner was not a party to this proceeding. The defendant Biondo then entered a plea of guilty to the charge, while the petitioner elected to stand trial. The trial was held, commencing on May 1, 1961, and the petitioner was found guilty by a jury. On May 11, 1961, this court imposed a sentence on the petitioner of five years imprisonment. The petitioner appealed the case and it was affirmed by the Eighth Circuit Court of Appeals at 295 F.2d 897.

The grounds for petitioner's pending motions are that the savings bonds were recovered as a result of an illegal search. The petitioner did not raise this question at or prior to his trial, although it was raised by his co-defendant Biondo. With respect to the raising of a charge of illegal search under Section 2255, the Eighth Circuit Court of Appeals in Warren v. United States, 311 F.2d 673, l. c. 675, had this to say:

"But aside from the fact that appellant's contentions have heretofore been fully considered, it is also well established that the complaints of illegal arrest and illegal search and seizure are not proper matters to be presented by a motion to vacate sentence under § 2255 but can only be properly presented by appeal from the conviction."

In Peters v. United States (C.A.8, 1963), 312 F.2d 481, 482, the court again stated:

"* * * Moreover, even if the conviction had been the product of a formal trial in which evidence derived from illegal search and seizure had been used to convict, any legal wrong involved in the admission of such evidence would, where, as here, the circumstances of the search and seizure were known to appellant at the time, have had to seek its correction through procedure other than a motion under § 2255. The procedure provided for protection against the effects of an illegal search and seizure is, in the first instance, the processes afforded by Rule 41 of the Rules of Criminal Procedure, 18 U.S.C.A., and beyond this, where the court has improperly failed to give this protection on a trial, the taking of an appeal from the judgment of conviction for correction of the court's error. A motion under § 2255 cannot be made the substitute for an appeal."

The Seventh Court of Appeals similarly ruled in Thomas v. United States, 308 F.2d 369.

The facts regarding the seizure of the property are fully set forth in the transcript made during the trial of this case. Commencing at page 19 of the transcript, the testimony reveals that two members of the St. Louis Police Department were parked in an alley near Euclid Avenue in the early hours of January 25, 1961. The petitioner and Biondo entered an automobile which was parked on the west side of Euclid. Gendron, the petitioner, drove the automobile into the entrance of the alley in which the officers were parked, backed it into the street and proceeded north on Euclid. The officers followed the car and arrested petitioner for illegally backing out of an alley. The officers asked to see his driver's license, which proved to be a void out-of-state license (Tr. 24–25 and 40). The petitioner was then placed under ar-

rest for failing to have a valid Missouri operator's license. The two men were then searched for weapons and Officer Maurer testified in part (Tr. 25) as follows:

" * * * I asked Mr. Gendron and Mr. Biondo if they carried weapons on their persons. They said they didn't. We searched their person. I asked Mr. Gendron if he carried any weapons in his automobile and he stated, 'No, sir.' I asked him if he minded if I searched his car and he said, 'No, go right ahead.' "

After receiving permission to search the car, the car was searched. A lump was observed in the middle of the front seat, indicating something was beneath the seat cover. The object was removed and proved to be a number of savings bonds which were subsequently found to be stolen. Upon being questioned the petitioner denied ever seeing the bonds before (Tr. 37).

The petitioner was represented by an attorney of his own choice at the trial of this case, a member of a law firm whose practice is largely criminal, when the above testimony was heard. He made no objection to it nor to the introduction of the stolen bonds into the evidence. In the motion now under consideration the petitioner summarizes the evidence as follows:

"On or about January 25, 1961, Petitioner was driving a 1948 Cadillac Automobile, north on Euclid Avenue, St. Louis, Missouri, at approximately 12:15 A.M. two (2) City Policemen from the St. Louis Metropolitan Police Department, Mr. George Maurer, and Mr. Delmor Brummett, stopped Petitioner just past the Laclede Avenue intersection on Euclid Avenue. That upon questioning by the Officer's the Petitioner informed the Officer's of his name and address, and that he was the owner of the car, and upon request produced an expired driver's license to Officer Brummett, while Petitioner was producing his driver's license to Officer Brummett, Officer Maurer, was searching Petitioner's car. At the time Officer Maurer was searching Petitioner's car, Petitioner was standing with his back to his car and did not see Officer Maurer searching his car, at this time Officer Maurer came to the back of Petitioner's car, where Petitioner was talking to Officer Brummett, and stated to Petitioner, 'What are these?', showing Petitioner a paper bag. Petitioner stated and said 'What are they?', Officer Maurer, said 'These Bonds.' Petitioner stated to Officer Maurer, 'I've never seen these Bonds before, I don't know where they came from, if they were in my car, I don't know how they got there.' Petitioner had never given consent to Officer Maurer or Officer Brummett to search his car."

The summary of the evidence as set forth above is substantially the same testimony given by the petitioner at his trial, there being no conflict between the two. The petitioner would have us vacate the sentence because he states in his motion that the city police did not have a search warrant. Nothing could be accomplished by returning the petitioner to this court for a hearing since the testimony in this case clearly sets forth what occurred. Both police officers testified, and so did the petitioner. The petitioner was arrested shortly after midnight for illegally backing out of an alley. Upon showing an expired out-of-state license, he was also arrested for this.

█ Under the facts and circumstances in this case it would not have been unreasonable for the officers to have searched the car for weapons without the consent of the petitioner, the driver of the car, but in this instance the petitioner, when asked if he minded if the car were searched by the officers, said, "No, go right ahead," clearly indicating his permission. The officers were searching for weapons, and while conducting

such search the bonds were found. The Supreme Court in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, held that, if during a valid search for an article evidence of another crime is discovered, it may be properly seized. That is what occurred here. The police were looking for weapons, not stolen bonds, and the search and seizure was not unreasonable or illegal.

The petitioner moved the court to appoint an attorney for him in this matter, although in his subsequent letter he indicates that he is not too concerned about an attorney, but it has been held in a number of decisions that the appointment of counsel under a section 2255 motion, unlike a trial, is a matter of discretion for the court. United States v. Caulfield, 7 Cir., 207 F.2d 278, and McCartney v. United States, 7 Cir., 311 F.2d 475. As the petitioner has not alleged any grounds upon which a hearing should be granted or relief afforded, there is no occasion for the appointment of an attorney, and the request is denied.

The motions of the petitioner are accordingly overruled in all particulars.